UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X

| | | |
|---|---|---|
| TESSEMAE'S LLC, a Maryland Limited Liability Company, | : : : | Index No. |
| Plaintiff, | : : | **COMPLAINT** |
| vs. | : : | |
| ATLANTIS CAPITAL LLC, a New York Limited Liability Company, MOHAMMAD (ALAN) S. RAHMAN, and JOSEPH BOHANNON, | : : : : : | |
| Defendants, | : : | |

--------------------------------------------------------- X

Plaintiff Tessemae's LLC ("Plaintiff" or "Tessemae's"), by its undersigned attorneys, for their complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action against the named defendants ("Defendants"), a group of financial "finders" and agents, who perpetrated a deceptive and fraudulent scheme and extorted improper "finder's fees" from Tessemae's.  Each of the Defendants conspired with one another to accomplish and/or further the objectives of the scheme detailed herein.

2.     Defendants' scheme—perpetrated against Tessemae's and, upon information and belief, against others—operates as follows:  Defendants act as finders and agents for small businesses in need of financing, and offer to introduce them to alternative sources of capital. Defendants conceal from the business owners that they receive a referral fee from the sources of funding.  Defendants then misrepresent their ability to terminate the financing transaction and, on the eve of closing, hold the transactions hostage by threatening to terminate the financing unless the business owner agrees to pay them exorbitant "finder's fees."

3.      Defendants directed their scheme at Tessemae's, a family-owned salad dressing and condiment company based in Maryland.  During the summer of 2017, Defendants offered to help Tessemae's secure capital to fund its ongoing operations.  Defendants then referred several financings to Tessemae's (structured as a purchase of Tessemae's' future receivables), which, as described below, it used to illegally extract additional fees from Tessemae's.

4.      As Tessemae's later learned, the Defendants concealed the fact that they had entered into referral agreements with the funding sources, which (1) provided that the funding sources would pay Defendants for any referrals, (2) required Defendants to disclose such fees to Tessemae's, and (3) prohibited the Defendants from charging any additional fees to Tessemae's.

5.      Defendants concealed this from Tessemae's and, instead, on the eve of closing the financing transactions, extorted purported "finder's fees" from Tessemae's.  Defendants provided Tessemae's with the financing transactions terms, which omitted any Tessemae's obligation to pay finder's fees to Defendants.  Defendants misrepresented their power to influence and control over the funding source's decision to provide the funding to Tessemae's. For example, Defendants misrepresented that Defendant Mohamad Rahman was a board member of one of the funder's.  Then, on the eve of closing, Defendants, for the first time, demanded that Tessemae's pay them outsized "finder's fees" or else, Defendants threatened, they would use their influence to terminate the financing to Tessemae's.

6.      Left no other choice, and in reliance on Defendants' representations, Tessemae's paid Defendants $118,403.98 in "finders fees."

7.      By this pleading, Tessemae's brings claims against the Defendants seeking money damages for (1) conversion, (2) fraud/fraudulent inducement, (3) unjust enrichment, and (4) unfair and deceptive business acts and practices under N.Y. Gen. Bus. Law §349.

## PARTIES

8.    Plaintiff Tessemae's is a limited liability company duly organized under the laws of the State of Maryland and having a place of business located at 8805 Kelso Drive, Essex, MD 21221.  For purposes of diversity, Tessemae's is a citizen of Maryland.

9.    Upon information and belief, Defendant Atlantis Capital LLC ("Atlantis") is a corporation organized and existing under the laws of the State of New York, having its principal place of business located at 111 John St., Suite #540, New York, New York, 10038.   For purposes of diversity, Atlantis is a citizen of New York.

10.    Upon information and belief, Mohammad (Alan) S. Rahman ("Rahman") is a domiciliary of the State of New York, residing in New York, New York.  At all relevant times, Rahman was a principal and CEO of Defendant Atlantis.

11.    Upon information and belief, Defendant Joseph Bohannon ("Bohannon," and with Rahman, the "Individual Defendants") is a domiciliary of the State of New York, residing in New York, New York.

## NON-PARTIES

12.    Bibby International Trade Finance, Inc., ("Bibby") is a registered organization duly organized with the State of Florida and who has its place of business located at 600 Town Park Lane, Suite 450, Kennesaw, Georgia 30144.

13.    Capital Partners Network OT, Inc. ("Capital Partners") is a registered organization duly organized with the State of Florida and who has its place of business located at 8019 N. Himes Ave., Suite 310, Tampa, Florida 33614.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15.     This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. Section 1367(a).

16.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated.

## FACT COMMON TO ALL CLAIMS

### Background

17.     Founded in 2009 by three brothers, Tessemae's is a family-owned salad dressing and condiment company dedicated to using all-natural, healthy ingredients.

18.     In or about the summer of 2017, Tessemae's was introduced to two brokers who purported to be able to assist Tessemae's in connecting with investors and other sources of capital.  The two brokers were Defendant Bohannon who, in turn, introduced Tessemae's to Defendant Rahman, the CEO of Atlantis.

### The Capital Partners Financing

19.     In or around August 2017, the Defendants approached Tessemae's with a funding opportunity.  Defendants proposed to introduce Tessemae's to Capital Partners, a funding company, and to facilitate a financing transaction whereby Capital Partners would purchase Tessemae's future receipts ("Capital Partners Financing").

20.     In conveying the terms of the Capital Partners Financing, Defendants omitted any mention of finder's fees due to them.

21.     Upon information and belief, Defendants had entered into an Independent Affiliate Agreement with Capital Partners to act as a referral source, or finder.

22.     Upon information and belief, pursuant to the agreement, Defendants were entitled to receive a finder's fee from Capital Partners.

23.     Upon information and belief, the agreement prohibited Defendants from soliciting or receiving any form of compensation from Tessemae's.

24.     On or about August 22, 2017, Defendants provided Tessemae's with the terms for the Capital Partners Financing.  The terms did not include any finder's fee information for the Defendants.

25.     In furtherance of their scheme to isolate Tessemae's and conceal their double fees, Defendants were careful to prevent any direct contact between Tessemae's and Capital Partners.  Tessemae's received the deal documentation and applications from Defendants, and Defendants instructed Tessemae's that all documentation and correspondence must go through them.  In fact, when Tessemae's emailed directly with Capital Partners, Individual Defendants berated and admonished Tessemae's for its so-called "inappropriate behavior."

26.     On September 5, 2017, two days before the anticipated closing of the first tranche of the Capital Partners Financing, the Defendants, for the first time, demanded that Tessemae's pay them a finder's fee or else they would prevent the Capital Partners Financing.

27.     Specifically, Individual Defendants demanded that Tessemae's make two payments of $9,995.00 to them (the "Capital Partners Finder's Fee").  Bohannon instructed

Tessemae's to complete ACH authorization forms—allowing Atlantis to directly withdraw the Capital Partners Finder's Fee from Tessemae's bank account.

28.     Individual Defendants informed Tessemae's that the Capital Partners Finder's Fee represented a customary fee that Tessemae's was obligated to pay.  Bohannon communicated that Individual Defendants had the power to prevent the Capital Partners Financing if Tessemae's failed to sign the ACH authorization forms and pay the Capital Partners Finder's Fee.

29.     In their email correspondence and telephone communications, Individual Defendants concealed from Tessemae's the critical facts that Defendants' agreement with Capital Partners prohibited them from charging Tessemae's a finder's fee, and that Defendants' were already entitled to receive a finder's fee from Capital Partners.

30.     Left no other choice, and in reliance on Individual Defendants' representations, Tessemae's agreed to pay the Capital Partners Finder's Fee.

31.     On or about September 9 and 21, 2017, the Capital Partners Financing closed and Tessemae's received funding from Capital Partners.

32.     During the month of September 2017, Defendants withdrew the Capital Partners Finder's Fee from Tessemae's account via ACH withdrawal.

**The Bibby Financing**

33.     In or around September 2017, the Individual Defendants approached Tessemae's with an additional funding opportunity.  Defendants proposed to introduce Tessemae's to Bibby, another funding company, and to facilitate a financing deal whereby Bibby would provide Tessemae's with a line of credit to be drawn against, and through a purchase of, Tessemae's accounts receivables ("Bibby Financing").

34.     In conveying the terms of the financing, Defendants omitted any mention of finder's fees due to them.

35.     Upon information and belief, Defendants had entered into a Referrer Engagement Agreement with Bibby.

36.     Upon information and belief, pursuant to the Referrer Engagement Agreement, Defendants were entitled to receive from Bibby a finder's fee in the amount equal to 10% of the total fees collected by Bibby.

37.     Upon information and belief, the Referrer Engagement Agreement required Defendants to disclose to Tessemae's that Defendants would be receiving the 10% finder's fee from Bibby.

38.     Upon information and belief, the Referrer Engagement Agreement prohibited Defendants from soliciting or receiving any form of compensation other than the 10% specified in the Referrer Engagement Agreement.

39.     Upon information and belief, the Referrer Engagement Agreement prohibited Defendants from engaging in any abusive or deceptive practices in connection with originating the financing transaction.

40.     Upon information and belief, the Referrer Engagement Agreement prohibited Defendants from making any verbal representations regarding their relationship with Bibby that were not specifically contained in the Bibby-approved marketing materials.

41.     On or about September 7, 2017, Defendants provided Tessemae's with a term sheet for the Bibby Financing.  The term sheet did not include any finder's fee information for the Defendants.

42.     On September 21, 2017, Rahman demanded from Tessemae's an additional $9,950.00 finder's fee for the previous Capital Partners Financing.  Not coincidentally, in the same communication, Rahman informed Tessemae's that he would speak with Bibby to "expedite" the Bibby Financing.

43.     On September 25, 2017, Tessemae's executed the Master Purchase and Sale Agreement with Bibby for the Bibby Financing.  The Bibby Financing was scheduled to close—with funds to be provided to Tessemae's—on September 28, 2017.

44.     On September 27, 2017, on the eve of closing the Bibby Financing, the Individual Defendants, for the first time, demanded that Tessemae's pay them an exorbitant finder's fee or else they would prevent the Bibby Financing.

45.     Specifically, Individual Defendants demanded that Tessemae's pay them an upfront fee of $60,000.00, plus an additional 1% of each invoice funded (the "Bibby Finder's Fee").  Bohannon instructed Tessemae's to complete ACH authorization forms—allowing Atlantis to directly withdraw the Bibby Finder's Fee from Tessemae's bank account.

46.     Moreover, Bohannon directed Tessemae's not to send the completed one-page ACH authorization forms directly to Bibby, but rather to "send it back to me so we can do our due diligence on it."

47.     Shortly after Individual Defendants' demand for the Bibby Finder's Fee, the Tessemae's officer called Bohannon.  During the telephone call, the Tessemae's officer expressed outrage that Defendants were disclosing the exorbitant Bibby Finder's Fee only now, on the eve of closing the Bibby Financing.  Bohannon, in turn, threatened to cancel the Bibby Financing if Tessemae's failed to sign the ACH authorization forms and pay the Bibby Finder's Fee.  Further, Bohannon falsely stated that Rahman was a member of Bibby's board of directors

and that he had the power to terminate the Bibby Financing should Tessemae's fail to sign the ACH authorization forms.

48.     In their email correspondence and telephone communications, Individual Defendants concealed from Tessemae's the critical facts that Individual Defendants' agreement with Bibby prohibited them from charging Tessemae's a finder's fee, and that Individual Defendants' were already entitled to receive a finder's fee from Bibby.

49.     Left no other choice, and in reliance on Individual Defendants' representations, Tessemae's agreed to pay the Bibby Finder's Fee.

50.     On or about September 28, 2017, the Bibby Financing closed and Tessemae's received funding from Bibby.

51.     On the same date, Defendants withdrew the $30,000.00 of the Bibby Finder's Fee from Tessemae's bank account.

52.     Several days later, seeking to memorialize their extortive Bibby Finder's Fee, Defendants coerced Tessemae's to execute a contract, dated October 2, 2017, providing for the Bibby Finder's Fee ("Finder's Fee Agreement").  The Finder's Fee Agreement provided that in consideration for the Bibby Financing—which had *already* been finalized and provided— Tessemae's agreed to pay the Bibby Finder's Fee.

53.     During the course of October 2017, Defendants withdrew an additional $30,000.00 of the Bibby Finder's Fee from Tessemae's bank account.

54.     During the course of October through December 2017, Defendants withdrew a total of $98,413.98 in connection with the Bibby Finder's Fee from Tessemae's bank account.

55.     In or about December 2017, Tessemae's uncovered the scope of Defendants fraudulent scheme.   Specifically, Tessemae's learned that Defendants concealed from

Tessemae's that they received a finder's fee directly from Bibby, that their agreement with Bibby prohibited them from charging Tessemae's a finder's fee, that Rahman was not a member of Bibby's board of directors, and that Defendants did not have the power to terminate the Bibby Financing if Tessemae's failed to pay Bibby Finder's Fee.

56.     Further, as Bibby learned of the Defendants deceptive and fraudulent scheme, Bibby informed Tessemae's that they terminated their relationship with Defendants as a result of their fraudulent scheme.

57.     On January 9, 2018, Rahman emailed Tessemae's inquiring about an additional payment of the Bibby Finder's Fee.  Upon Tessemae's rejection of its obligation, Rahman, resorting to his tried and tested tactic of promising Tessemae's additional funding on always better terms, responded that "we may have better Bibby Financing offer … for companies like you now, it is up to you to choose…."

## FIRST CAUSE OF ACTION
### (<u>CONVERSION</u>)

58.     Tessemae's realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

59.     Tessemae's has a right to possession of its $118,403.98.

60.     Defendants have wrongfully asserted dominion over Tessemae's $118,403.98.

61.     Despite due demand, Defendants have refused to return the $118,403.98 over to Tessemae's.

62.     Defendants have wrongfully interfered with Tessemae's' right to possess the $118,403.98 which interference constituted conversion of the $118,403.98 by Defendants.

63.     As a result of Defendant's wrongful conversion of the $118,403.98, Tessemae's has been damaged.

64.     Tessemae's, therefore, is entitled to an award of damages in an amount to be determined at trial, but in any event no less than $118,403.98.

**SECOND CAUSE OF ACTION**
**(FRAUD/FRAUDULENT INDUCMENT)**

65.     Tessemae's realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

66.     In order to induce Tessemae's to pay Defendants the Capital Partners Finder's Fees and the Bibby Finder's Fees, Individual Defendants, and Atlantis through Individual Defendants, made the following material misrepresentations and/or omissions:

   a.   concealing from Tessemae's that Defendants would receive a finder's fee from Capital Partners and/or Bibby,

   b.   Stating that Rahman was a member of Bibby's board of directors; and

   c.   Stating that the Defendants had the ability to prevent the Capital Partners and/or Bibby financing deals

67.     Each of the above representations was false and each of the above omissions were withheld from disclosure in order to falsely induce Tessemae's.

68.     Defendants knew at the time it made each of the above misrepresentations that each was false and/or that Tessemae's was ignorant of the truth of each representation. Defendants knew that the material omissions were create a false impression

69.      In making the representations, and failing to disclose the material non-disclosures enumerated, Defendants intended for Tessemae's to rely upon each of the representations and material non-disclosures in order to induce Tessemae's to Defendants the Capital Partners Finder's Fees and the Bibby Finder's Fees and enter into the Finder's Fee Agreement.

70.     Tessemae's was ignorant of the falsity of Defendants' representations or the existence of the intonation contained in Defendants' material non-disclosures.

71.     Tessemae's relied upon Defendants' false representations and material non-disclosures in entering into the Contract

72.      Tessemae's had the right to rely on Defendants' representations and material nondisclosures and Tessemae's' reliance was justified.

73.     As a result of Defendants' fraud, Tessemae's has been damaged in the amount of, at least, $118,403.98, which Defendants withdrew from Tessemae's bank account.

74.     Tessemae's is entitled to recover all damages as a result of Defendants' fraud, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

75.     Tessemae's realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

76.     When Tessemae's paid Defendants it reasonably believed that it was legally obligated to make such payments based upon the Defendants' fraudulent misrepresentations and omissions.

77.     Tessemae's payments constitute a benefit which the Defendants aggressively sought and voluntarily accepted.

78.     The Defendants to wrongfully obtained payments from the plaintiff through their fraudulent scheme as described more fully in the paragraphs above.

79.     Retention of those benefits would violate fundamental principles of justice, equity and good conscience.

## FOURTH CAUSE OF ACTION
## (<u>NEW YORK GENERAL BUSINESS LAW § 349</u>)

80.     Tessemae's realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

81.     The actions of Defendants constitute violations of New York General Business Law§ 349.

82.     Each separate finder's fee charged to Tessemae's constituted a separate violation of New York General Business Law § 349.

83.     The Defendants' deceptive acts were committed knowingly and maliciously with intent to deceive Tessemae's and the public.

84.     The Defendants knew that their representations and/or omissions (or the representations/omissions they were facilitating), were deceptive and that they would be relied upon by Tessemae's. Such representations and/or omissions included: (a) concealing to Tessemae's that Defendant would receive a finder's fee from Capital Partners and/or Bibby, (b) stating that Rahman was a member of Bibby's board of directors; and (3) that the Defendants had the ability to prevent the Capital Partners and/or Bibby financing deals.

85.     The Defendants' false claims were deceptive and misleading, and were relied upon by Tessemae's in making their finder's fee payments to the Defendants.

86.     Tessemae's has been damaged defendants' actions in that Tessemae's made substantial bogus finder fee payments to the Defendants.

87.     Tessemae's is thus entitled to recover from Defendants the payments they made to the Defendants.  Tessemae's hereby requests the return of these payments from the Defendants, plus interest and attorneys' fees.

88.     In their scheme to fraudulently obtain insurance payments from Tessemae's, Defendants engaged in materially deceptive practices and representations designed to, and which did, mislead Tessemae's into reasonably, though falsely, believing that the Capital Partners and/or Bibby Finder's Fees were customary and that Defendants had the power to prevent the financing deals if the fees were not paid.

89.     Tessemae's justifiably relied upon Defendants' deceptive acts, practices and representations in paying bills submitted by the defendants.  Defendants' fraudulent scheme was undertaken in the conduct of their business and in the furnishing of services in the State of New York, in violation of New York Gen. Bus. Law§ 349(d), et. seq.

90.     The Defendants' materially deceptive acts and practices have: (1) damaged Tessemae's by inducing it to pay thousands of dollars in fraudulent finder's fees; (2) harmed other New York merchants similarly effected by Defendants' practices; and (3) harmed the public interest in general by such fraudulent practices.

91.     By reason of the foregoing, Tessemae's has been damaged and injured in its business and property. Tessemae's is also entitled to an award of punitive damages, interest and reasonably attorneys' fees pursuant to New York General Business Law § 349(h).

## **CLAIM FOR RELIEF**

**WHEREFORE**, Plaintiff Tessemae's seeks judgment against Defendants as follows:

i.      For damages in an amount to be determined, but in any event not less than, of One Hundred and Eighteen Thousand Four Hundred and Three dollars and 98/100 cents ($118,403.98);

ii.     For declaratory relief, declaring the Finder's Fee Agreement to be null and void;

iii.    For interest, attorneys' fees and the costs and disbursements of this action; and

iv.    For such other further relief as the Court may deem just, proper, and in the

interest of justice.

Dated:  New York, New York
          June 1, 2018

                                   SICHENZIA ROSS FERENCE KESNER LLP

                                   By /s/ Mendy Piekarski_____
                                          Mendy Piekarski, Esq. (MP-0445)
                                   1185 Avenue of the Americas, 37th Floor
                                   New York, New York 10036
                                   (212) 930-9700

                                   *Attorneys for Plaintiff Tessemae's LLC*